UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

DARIO MELENDEZ, and KHALID AMINZADA,   Docket No.:

                                     Plaintiffs,   **COMPLAINT**

     -against-

A.K. RASHIDZADA CORPORATION, NEW PRIDE   **JURY TRIAL DEMANDED**
CORP and MAGID A. RASHIDZADA,

                                                                  **Collective Action and Class**
                                                                   **Action Complaint**

                                     Defendants.

-------------------------------------------------------------------X

       DARIO MELENDEZ and KHALID AMINZADA (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through their attorneys, TULY RINCKEY, PLLC, as and for their Complaint against A.K. RASHIDZADA CORPORATION, NEW PRIDE CORP and MAGID A. RASHIDZADA (collectively, "Defendants"), allege upon personal knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF CASE

    1.    Plaintiffs bring this action on behalf of themselves and a putative collective action and class for Defendants' systemic and continuous violations of:

        (i)    the overtime provision the Fair Labor Standards Act ("FLSA");

        (ii)    the overtime provision of the New York Labor Law ("NYLL");

        (iii)    the New York State Anti-Retaliation Provision, NYLL § 215(1);

        (iv)    the prohibition against unlawful deductions as contained in NYLL §193;

        (v)    the requirement that employers furnish employees with wage statements on each payday, containing specific categories of accurate information, and also provide

      employees with accurate wage notice at the time of hiring, pursuant to NYLL § 195(1) and (3), codified as the New York Wage Theft Prevention Act (the "NYWTPA");

(vi)    the anti-discrimination provisions, based on race and national origin, of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1); and

(vii)    any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.    Defendant A.K. RASHIDZADA CORPORATION wholesales and distributes general and personal consumer items. The Company markets personal hygiene, batteries, lighters, and other non-food items to retail outlets throughout the United States. It has several subsidiaries and/or related entities through which it operates, including but not limited to, Defendant New Pride Corp.

3.    Plaintiffs have worked for Defendants at various times from 2017 to the present. As employees, Plaintiffs performed and continue to perform the following functions: making sales, traveling to trade shows, and storing, sorting, packing, and shipping the merchandise. Throughout the course of their employment, Plaintiffs regularly worked as many as six (6) days a week, and over forty (40) hours each week, as detailed below. Indeed, Defendants engaged in a systematic scheme of, inter alia: i) failing to pay Plaintiffs their statutorily required overtime compensation; and ii) failing to provide Plaintiffs with lawful wage statements and wage notices, pursuant to the New York Wage Theft Protection Act ("NYWTPA"), among other violations.

4.    Further, Defendants systematically discriminated against its workers of Hispanic origin and created a hostile work environment based on race and national origin.

5. The named Plaintiffs are now bringing this action, on behalf of themselves and all other similarly situated employees, to hold Defendants accountable for their unlawful pay practices.

## JURISDICTION AND VENUE

6. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et. seq*. The supplemental jurisdiction of the Court is invoked pursuant to pursuant to 28 U.S.C. § 1367 over all state law claims.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants resides within this judicial district.

## DEMAND FOR A JURY TRIAL

8. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury in this action.

## PARTIES

9. At all relevant times herein, DARIO MELENDEZ was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, NYHSRL and NYWTPA.

10. At all relevant times herein, KHALID AMINZADA, was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, NYHSRL and NYWTPA.

*A.K. RASHIDZADA CORPORATION*

11. At all relevant times herein, A.K. RASHIDZADA CORPORATION ("AKR") was and is a domestic limited liability company, with its principal place of business located at 4333 Veterans Memorial Hwy, Ronkonkoma, NY 11779-7631.

12. At all relevant times herein, AKR was and is an "employer" within the meaning of the FLSA and NYLL. Its qualifying annual business exceeds $500,000.00, and it is engaged in interstate commerce within the meaning of the FLSA. Additionally, AKR is an "employer" that "employs" four or more "employees" within the meaning of the NYSHRL.

13. AKR compensated the within Plaintiffs for their employment with the Defendants.

*NEW PRIDE CORP*

14. At all relevant times herein, NEW PRIDE CORP ("New Pride") was and is a domestic limited liability company, with its principal place of business located at 4333 Veterans Memorial Hwy, Ronkonkoma, NY 11779-7631.

15. At all relevant times herein, New Pride was and is an "employer" within the meaning of the FLSA and NYLL. Its qualifying annual business exceeds $500,000.00, and it is engaged in interstate commerce within the meaning of the FLSA. Additionally, New Pride is an "employer" that "employs" four or more "employees" within the meaning of the NYSHRL.

16. New Pride compensated the within Plaintiffs for their employment with the Defendants.

*MAGID A RASHIDZADA*

17. At all relevant times herein, MAGID A RASHIDZADA ("Mr. Rashidzada") was and is an owner, shareholder, director, supervisor and managing agent of AKR who actively participated, and continues to actively participate, in the day-to-day operations of AKR, and who acted maliciously and is an employer pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the corporate Defendant AKR.

18. At all relevant times herein, Mr. Rashidzada was and is an owner, shareholder, director, supervisor and managing agent of New Pride who actively participated, and continues to

4

actively participate, in the day-to-day operations of New Pride, and who acted maliciously and is an employer pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the corporate Defendant New Pride.

19.     At all times hereinafter mentioned, Mr. Rashidzada exercised control over the terms and conditions of Plaintiffs' employment, in that he had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

## COLLECTIVE ACTION ALLEGATIONS

20.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following class:

> Current and former employees of Defendants, during the relevant statutory period, seeking to recover overtime compensation at the statutory rate, which is legally due to them for the time worked in excess of forty (40) hours per week ("FLSA Plaintiffs").

21.     The class of employees on behalf of whom Plaintiffs brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies or plans, namely, Defendants' policy of inter alia, not paying employees for their overtime hours at a rate of one-and-one-half times their regular rate; (c) their claims are based upon the same factual and legal theories; and (d) the employment relationship between Defendants and every putative Class member is exactly the same and differs only by name, location, and rate of pay.

22.     Specifically, for the duration of the Plaintiffs' employment with Defendants, Plaintiffs worked six (6) days a week, and were not compensated at the statutorily required rate of

one-and-one-half times their standard pay rate for the hours that they worked in excess of forty (40).

23. Plaintiffs estimate that the FLSA Plaintiffs, including both current and former employees during the relevant statutory period, includes at least 50 members. The precise number of FLSA Plaintiffs members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

24. Plaintiffs' entitlement to overtime pay would be similar to that of the other FLSA Plaintiffs, and their claim would depend on identical factual and legal questions, including but not limited to:

   i. whether Defendants violated the FLSA through their pay practices;
   ii. whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the FLSA; and
   iii. whether Defendants' violations were willful.

## RULE 23 CLASS ACTION ALLEGATIONS UNDER NEW YORK LAW

25. Plaintiffs also seek to maintain this action pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(4) on behalf of a putative class defined to include: All current and former employees of Defendants who perform or performed any work in any of Defendants' locations in any capacity, during the statutory period, within the State of New York, who were: i) denied overtime wages at the statutory rate of one-and-one-half times the employee's standard pay rate; ii) were denied wage statements in violation of NYLL § 195(3); and iii) were denied wage notices upon hiring in violation of NYLL § 195(1) (hereinafter, the "New York Class").

26. *Numerosity:* The members of the New York Class are so numerous that joinder of all members in the case would be impracticable. Plaintiffs reasonably estimate that there are over

50 Class members who reside and work in New York. The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

27. Commonality/Predominance: There is a well-defined community of interest among the New York Class members and common question of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

   a. whether Defendants violated the NYLL through its pay practices;

   b. whether the New York Class worked in excess of forty (40) hours per week;

   c. whether Defendants failed to pay the New York Class at the statutory rate for the hours worked in excess of forty (40) hours;

   d. whether Defendants failed to provide the New York Class with accurate wage statements, pursuant to NYLL § 195(3);

   e. whether Defendants failed to provide the New York Class with accurate wage notices upon hiring, pursuant to NYLL § 195(1);

   f. whether Defendants' violations were willful; and

   g. whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL and the N.Y.C.R.R.

28. *Typicality:* Plaintiffs' claims are typical of those of the New York Class in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices and course of conduct as all other New York Class members' claims and Plaintiffs' legal theories are based on the same legal theories as all other New York Class members, as detailed above.

29. *Adequacy:* Plaintiffs will fully and adequately protect the interests of the New York Class, and Plaintiffs have retained counsel who are qualified and experienced in the litigation of wage-and-hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the New York Class.

30. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for the New York Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

31. This case will be manageable as a class action because Defendants have or should have payroll systems that will allow the wage-and-hour facts and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

## ALLEGATIONS PARTICULARIZED TO EACH PLAINTIFF

### Dario Melendez

32. Mr. Melendez commenced his employment with the Defendants on or about August 2018. He was terminated, without cause, on or about April 4, 2020.

33. Mr. Melendez's title was Assistant to Salesman/Warehouse worker and his duties included, inter alia, accounts receivable, packing orders, printing shipping labels, keeping track of prices, and traveling out of state to make sales.

34. Mr. Rashidzada was Mr. Melendez's direct supervisor at all relevant times.

35. Throughout his employment, Mr. Melendez was a full-time employee who worked tirelessly for the Defendants. He worked *at least* 48 hours per week, because his schedule was 8 hours a day for six days a week, from Monday through Saturday.

36. At the start of his employment, in 2018, Defendants paid Mr. Melendez $500.00 a week.

37. Thereafter, Mr. Melendez received a raise and was paid approximately $600-$700 per week, irrespective of how many hours he actually worked.

38. Despite routinely working in excess of forty (40) hours per week, Defendants failed to pay Mr. Melendez overtime wages at the statutorily-mandated rate of one-and-one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty.

39. Mr. Melendez was grossly underpaid during the entirety of his employment with Defendants. Shockingly, Mr. Melendez 2019 tax records show that AKR Corporation paid him wages in the sum of $18,299. Thus, AKR's payments were in express violation of the FLSA and NYLL and show that Mr. Melendez was underpaid each week of 2019.

40. Additionally, Defendants failed to keep accurate time and payroll records as required by law. Specifically, they paid Mr. Melendez in both cash and check. Thus, there are no accurate payroll records whatsoever documenting his compensation.

41. Defendants failed to provide Mr. Melendez with a proper wage notice upon hiring, which summarized, inter alia, the manner, frequency, and terms of compensation. Specifically, it failed to account for all overtime hours he was expected to work, and wages for same.

42. Likewise, Defendants failed to provide Mr. Melendez with accurate pay stubs in violation of the NYLL and NYWTPA. Specifically, it failed to account for all overtime hours worked, and wages for same.

43. When Defendants terminated Mr. Melendez's employment on or about April 2020, they did not give him a statement regarding his termination, and cessation of benefits, as required.

***Defendants Failed to Pay Mr. Melendez Overtime Wages
and Travel Expenses in Connection with Mandatory Travel***

44. Mr. Melendez frequently traveled for work, and when he traveled, he was on the clock almost 24/7. However, he was not paid for these overtime hours. Worse still, Mr. Melendez was frequently forced to pay for trip expenses such as the hotel and airfare. Defendants promised to reimburse him for these expenses, but they reneged on their promise and never provided the promised reimbursement.

45. Specifically, Mr. Melendez traveled to Gayrold, Texas for a work exhibition from September 13-16, 2019. Each day at the exhibition, he worked over 10 hours, and he was never paid overtime wages for those overtime hours. Additionally, Mr. Melendez was never reimbursed for the expenses he paid in connection with the trip to Texas.

46. Likewise, Mr. Melendez traveled to Vegas for a work exhibition in July 2019. Each day at the exhibition, he worked 10 hours, and he was never paid overtime wages for those overtime hours. Additionally, Mr. Melendez was never reimbursed for the expenses he paid in connection with the trip to Vegas.

*Mr. Melendez is Subject to Racial Discrimination*
*And a Hostile Work Environment Based on Race*

47. Mr. Melendez is of Hispanic origin. Throughout Mr. Melendez's employment, Mr. Rashidzada repeatedly treated Mr. Melendez less favorably than his coworkers because of his race by making recurrent derogatory comments about the color of his skin and his race.

48. Initially, the comments were merely offensive, but they quickly escalated to more serious racial statements that greatly distressed Mr. Melendez.

49. Mr. Rashidzada referred to Mr. Melendez as "Mexican" in a derogatory tone and called him a "punk ass kid who doesn't know his f**cking place."

10

50. Mr. Rashidzada would often make these blatantly racist statements to Melendez -- in front of his colleagues -- to publicly embarrass him. Specifically, Mr. Rashidzada once remarked that "I don't need your spick kind working for me."

51. Mr. Rashidzada also said about Mr. Melendez that that "f***ink spic…is lucky to have a job…".

52. Mr. Rashidzada's discriminatory remarks were made to anyone in the company who he believed was of Hispanic origin. Specifically, Mr. Rashidzada referred to all of the warehouse workers as "Mexicans" or "Beaners" and told them it was about time they learned English.

53. Similarly, when a Hispanic worker was late, Mr. Rashidzada said with disgust: "Why isn't he here yet? Is this how they drive in Mexico?"

54. These offensive remarks created a hostile work environment based on race and caused Mr. Melendez great shame and anxiety.

### Khalid Aminzada

55. Mr. Aminzada commenced his employment with the Defendants on or about April 2017. His employment with Defendants ended on or about May 2020.

56. Mr. Aminzada's duties included, <u>inter alia</u>, sales, obtaining new clients, attending shows and exhibitions, producing sales catalogue, etc.

57. Mr. Rashidzada was Mr. Aminzada's direct supervisor at all relevant times.

58. Mr. Aminzada was instrumental in the growth and development of Rashidzada's import/export business.

59. Throughout his employment, Mr. Aminzada was a full-time employee who worked tirelessly for the Defendants. He worked *at least* 48 hours per week, because his schedule was 8 hours a day, six days a week, from Monday through Saturday.

60. In fact, the Defendants had a systemic policy of having their employees work 6 days a week, without paying any overtime.

61. At the beginning of his employment, Defendants paid Mr. Aminzada at a rate of approximately $400.00 per week, irrespective of how many hours he actually worked.

62. After two years, Defendants paid Mr. Aminzada at a rate of approximately $500.00 per week, irrespective of how many hours he actually worked.

63. Defendants paid Mr. Aminzada on a weekly basis either by check or cash.

64. Mr. Aminzada was grossly underpaid during the entirety of his employment with Defendants. Shockingly, Mr. Aminzada's 2018 tax records show that AKR Corporation paid him wages in the sum of $4,053.00. Likewise, Mr. Aminzada's 2019 tax records show that AKR Corporation paid him wages in the sum of $26,349.44. Thus, AKR's payments were in express violation of the FLSA and NYLL and show that Mr. Aminzada was underpaid each week of 2018 and 2019.

65. Indeed, despite routinely working far in excess of forty (40) hours per week, Defendants failed to pay Mr. Aminzada the statutorily-mandated rate of one-and-one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty.

66. Mr. Aminzada also promised Mr. Aminzada a bonus but he was never given the promised bonus, although he was instrumental in the growth of the company.

67. Additionally, Defendants failed to keep accurate time and payroll records as required by law. Specifically, they paid Mr. Aminzada in cash and by check. Thus, there are no accurate records documenting his compensation.

68. Defendants failed to provide Mr. Aminzada with a proper wage notice upon hiring, which summarized, <u>inter alia</u>, the manner, frequency, and terms of compensation. Specifically, it

failed to account for all overtime hours he was expected to work and the overtime wages he was entitled to as a matter of law.

69. Likewise, Defendants failed to provide Mr. Aminzada with accurate pay stubs in violation of the NYLL and NYWTPA. Specifically, it failed to account for all overtime hours worked and for all wages paid.

### *Defendants Failed to Pay Mr. Aminzada Overtime Wages and Travel Expenses in Connection with Mandatory Travel*

70. A vital part of Mr. Aminzada's work was travel. He would go to conventions and set up booths and sell Defendants' merchandise, which included inter alia, beauty and hair products, Energizer batteries, Dove bath products, and lighters. When he traveled, he was on the clock almost 24/7. However, he was not paid for these overtime hours.

71. Worse still, Mr. Aminzada was often forced to pay for trip expenses such as the hotel, airfare, rental cars and gas. Defendants promised to reimburse him for these expenses, but they reneged on their promise and never provided the full reimbursement.

72. Mr. Aminzada traveled to Gayrold, Texas for a work exhibition from September 13-16, 2019. Each day at the exhibition, he worked approximately 10 hours, and he was never paid overtime wages for those overtime hours. Additionally, Mr. Aminzada was never reimbursed for the expenses he paid in connection with the trip to Texas. He had to pay for the hotel, rental car, gas, and dinner with customers, and he was only reimbursed for half of what he spent.

73. Likewise, Mr. Aminzada traveled to Vegas four times for work conventions on the following dates:

    a. April 5th – 9th of 2019

    b. April 19-22nd of 2018

    c. July 28th -31st of 2018

  d. March 22nd-25th of 2020

74. For each trip, Mr. Aminzada had to set up booths, monitor the booths throughout the day and then dismantle the booths at night. At each convention he worked approximately 10 hours per day, and he was never paid overtime wages for those overtime hours. Additionally, Mr. Aminzada was never reimbursed for the expenses he paid in connection with the trips to Vegas.

75. In sum, Mr. Aminzada traveled to approximately 20 states during his employment with Defendants, including but not limited to: Tennessee, Michigan, Illinois, Wisconsin, Ohio, and Maryland. On each trip, he worked extraordinarily long hours for Defendants, and he was never paid overtime hours or expenses in connection with those trips. Specifically, Mr. Aminzada traveled to these locations: Vegas, Tennessee, Michigan, Illinois, Wisconsin, Ohio, Maryland, Pennsylvania, Colorado, Indiana, Mississippi, Massachusetts, Minnesota, Utah, California, Virginia, Georgia, Iowa, North Carolina, and Oregon.

76. When Mr. Aminzada asked for overtime wages, Defendants retaliated against him and fired him. Specifically, on March 5th, 2020, Mr. Aminzada demanded overtime wages. In response, Mr. Rashidzada demeaned him and terminated his employment.

77. Mr. Rashidzada's alleged reasons for terminating Mr. Aminzada were entirely pretextual. In fact, Mr. Aminzada's termination constituted unlawful retaliation.

*Mr. Aminzada is Subject to Discrimination*
*And a Hostile Work Environment*

78. Mr. Aminzada suffered discrimination based on familial status. Since he was family to Mr. Rashidzada, he was denied lawful wages and treated less favorable than his coworkers.

79. Mr. Rashidzada insulted Mr. Aminzada daily believing he had grounds to do this since he was a family member.

80. These offensive remarks created a hostile work environment based on familial status and caused Mr. Aminzada great shame and anxiety.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
*(For Violations of the Federal Overtime Pay Requirements, 29 U.S.C. §§ 201-219)*

81. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

82. Plaintiffs and class members were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one-and-a-half (1 ½) times their regular rate of pay.

83. These practices were willful and lasted for the duration of all relevant time periods.

84. These practices are in violation of the FLSA.

85. By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus liquidated damages, costs and attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
*(For Violations New York State Overtime Pay Requirements, NYLL §§ 650 et seq.)*

86. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

87. Plaintiffs and class members were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one -and-a-half (1 ½) times their regular rate of pay.

88. These practices were willful and lasted for the duration of all relevant time periods.

89. These practices are in violation of Labor Law §§ 650 *et seq*.

90. By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus liquidated damages, costs and attorneys' fees.

**AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS**

*(Unlawful Deductions in Violation of the NYLL § 193 and 12 NYCRR § 195-4.5)*

91. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

92. New York Labor Law §193(1) prohibits employers from making any deductions from an employee's wages except for those permitted by law or those made for the benefit of the employee which are explicitly authorized in writing by the employee.

93. New York Labor Law §193(2) prohibits employers from making any charge against an employee's wages or requiring an employee to make any payment by separate transaction, unless such payment is a permitted deduction pursuant to New York Labor Law §193(1).

94. In requiring Plaintiffs Mr. Melendez and Mr. Aminzada to pay for trip expenses, Defendants have violated New York Labor Law §193 and 12 N.Y.C.R.R. § 195-4.5.

95. Based on the foregoing, Plaintiffs are entitled to recover the cost of the expenses the Defendants illegally shifted to Plaintiffs, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**
*(For Violation of the New York Labor Law § 195 (3))*

96. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

97. New York Labor Law §195 (3) and the NYWTPA requires that employers furnish employees with wage statements containing specific enumerated criteria on each occasion when the employer pays wages to the employee.

98. The Defendants did not issue accurate pay stubs to any of the within Plaintiffs in violation of New York Labor Law §195 (3) and the NYWTPA.

99. Specifically, Plaintiffs and class members were not given pay stubs which accurately reflected the number of overtime hours they worked, and did not identify the overtime rate they should have been paid.

100. These practices were willful and in violation the NYWTPA.

101. By reason of the foregoing, Defendants are liable to the Plaintiffs and the putative class in an amount to be determined at trial plus liquidated damages, costs and attorneys' fees.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violation of the New York Labor Law § 195 (1))*

102. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

103. New York Labor Law §195 (1) and the NYWTPA requires that employers furnish employees with wage notices upon hiring containing specific enumerated criteria regarding wages, method of payment etc.

104. Here, Defendants did not issue wage notices to the Plaintiffs upon hiring, as required by New York Labor Law § 195(1).

105. These practices were willful and in violation the NYWTPA.

106. By reason of the foregoing, Defendants are liable to the Plaintiffs and the putative class in an amount to be determined at trial plus liquidated damages, costs and attorneys' fees.

### AS AND FOR A SIXTH CAUSE OF ACTION
*(Hostile Work Environment Based on Race and Racial Discrimination)*

107. Plaintiffs repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

108. The NYSHRL prohibits discrimination in the terms, conditions and privileges of employment on the basis of an individual's race.

109. Plaintiff Dario Melendez is an "employee" within the meaning of the NYSHRL, while Defendants are a covered "employer" under the NYSHRL.

110. Defendants, as described above, discriminated against Dario Melendez, who is of Hispanic origin, by subjecting him to a hostile work environment, in the form of grossly improper racial remarks and abusive conduct. This resulted in Dario Melendez being treated less favorably based upon race, and by conditioning the terms and conditions of his employment on acquiescence to working in such a hostile work environment.

111. As a direct and proximate result of Defendants' discriminatory conduct, Dario Melendez has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

112. As a direct and proximate result of Defendants' discriminatory conduct, Dario Melendez has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

**AS AND FOR AN SEVENTH CLAIM FOR RELIEF**
**BY PLAINTIFF KHALID AMINZADA**
*(Violation of NYLL § 215: Unlawful Retaliation)*

113. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

114. Defendants intentionally, willfully, and maliciously terminated Plaintiff Khalid Aminzada's employment in violation of § 215 of the New York Labor Law.

115. Mr. Aminzada complained that he was denied lawful wages.

116. In response, Defendants immediately engaged in retaliatory conduct and created a hostile work environment,

117. Mr. Aminzada made a second request and again asked for his outstanding compensation, along with his overtime wages, and other expenses.

118. In response, Defendants terminated Mr. Aminzada's employment.

119. Defendants discharged Mr. Aminzada because he engaged in protected activity.

120. The temporal proximity between Plaintiff's exercise of his rights under the NYLL and Defendants' adverse employment action give rise to an inference of retaliation.

121. By reason of the foregoing, Plaintiff Aminzada is entitled to all appropriate relief, including, but not limited to, reinstatement, enjoining Defendants from further retaliation, payment of lost and withheld compensation in an amount to be determined at trial, back pay, emotional distress damages, liquidated damages, interests, costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

2. A judgment declaring that the practices complained of herein are unlawful and in violation of FLSA, NYLL, and NYSHRL, as detailed herein;

3. A judgment declaring that Defendant Magid A. Rashidzada is personally liable for the violation of FLSA, NYLL, and NYSHRL, as detailed herein;

4. An award to the Plaintiffs for all damages which Plaintiffs have sustained as a result of Defendants' conduct, including back pay, general and special damages for lost compensation

and job benefits they would have received but for Defendants' improper practices, and liquidated damages;

5. An award to the Plaintiffs of compensatory damages, including but not limited to damages for emotional pain and suffering where appropriate;

6. An award to the Plaintiffs of pre-judgment interest at the highest-level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

7. An award to the Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties;

8. An award to the Plaintiffs of exemplary damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless, and/or intentional conduct where appropriate;

9. An award to the Plaintiffs for costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, and expert witness fees; and

10. Any other and further relief as this Court finds necessary and proper.

Date: New York, New York
June 23, 2022

Respectfully submitted,

_____
Chaya M. Gourarie, Esq.
Tully Rinckey PLLC
777 Third Avenue 21st Floor
New York, NY 10017
Phone: (646) 813-2965
Fax: (646) 705-0049
cgourarie@tullylegal.com
*Attorneys for Plaintiffs*