

420 LEXINGTON AVENUE, SUITE 1601
NEW YORK, NEW YORK 10170
PHONE: (646) 201-9100
FAX: (646) 705-0049
WWW.TULLYLEGAL.COM
EMAIL: INFO@TULLYLEGAL.COM

June 6, 2023

**Via ECF**

Chief Judge Margo K. Brodie
U.S. District Court
Eastern District of New York (Central Islip)

    Re:    *Melendez et al v. A.K. Rashidzada Corporation, et al.*,
             Docket No. 2:22-cv-03717-MKB-AYS

Dear Judge Brodie:

    We represent the Plaintiffs in the above-referenced matter. With the consent of defense counsel, we present the parties' finalized settlement agreement (Exhibit A). Plaintiffs respectfully seeks court approval of the settlement, which provides for a total payment of $55,000 to Plaintiffs (inclusive of attorneys' fees), in accordance with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). As per its terms, each Plaintiff would receive the sum of $17,264.25, divided by 4 payments (subject to the usual tax withholdings). Plaintiffs' counsel will receive $19,250.00 (fees) and $1,221.50 (costs). The attorneys' fees equal approximately thirty-five percent (35.00%) of the Fifty-five Thousand dollar ($55,000.00) settlement.

**Procedural History**

    Plaintiffs Dario Melendez and Khalid Aminzada ("Plaintiffs") brought this action against Defendants A.K. Rashidzada Corporation, New Pride Corp. and Magid A. Rashidzada, (collectively, "Defendants") on June 23, 2022. Plaintiff alleged, inter alia: (i) wage and hour violations pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"); (ii) failure to provide employees with certain wage notices pursuant to NYLL § 195(1) and (3); (iii) failure to reimburse for certain business expenses in connection with attendance at trade shows; (iv) racial and national origin discrimination under the New York State Human Rights Law ("NYSHRL")on behalf of Dario Melendez; and (v) familial discrimination and retaliatory discharge on behalf of Khalid Aminzada. [Dkt. 1].

    On August 25, 2022, Defendants wrote a pre-motion letter seeking to dismiss two of Mr. Aminzada's claims: (i) familial discrimination based on alleged failure to state a claim; and (ii) retaliation, based on it being time-barred. Plaintiff agreed to dismiss the familial discrimination claim but claimed that it was premature at the pleading stage, to determine whether Mr. Aminzada's claim was time-barred. [Dkt. No. 15]. The court indicated during the pre-motion conference that it agreed with Plaintiffs' reasoning that it was premature to determine the timeliness of Mr. Aminzada's retaliation claim.

Thereafter, Defendants filed an answer, and a counterclaim against Mr. Aminzada. The counterclaim alleged that Mr. Aminzada had owed a debt of $60,000.00 to Z&H Wholesale, which was now owed to Defendants, since they had guaranteed and/or absorbed the debt and paid same. [Dkt. No 22].

Mr. Aminzada filed an answer and denied all allegation in the counterclaim.

In the interim, document discovery commenced. The parties complied with the Court's ORDER IN FLSA CASE REQUIRING DISCOVERY AND SETTING INITIAL PRETRIAL SCHEDULE [Dkt. 21], and exchanged additional discovery thereafter.

On January 17, 2023, Magistrate Judge Anne Y. Shields referred the case to the Court's Mandatory Mediation Program

On April 3, 2023, the parties participated in an all-day mediation session with the mediator Rhonda Epstein. With her assistance, the parties reached a settlement in principle and executed a term sheet. Since then, the parties have been negotiating the terms of a full written agreement, which is now finalized and submitted here as Exhibit A. [1]

I.   **Claims and Defenses**

Plaintiffs alleged in the Complaint that they regularly worked more than forty (40) hours per week for Defendants and were not properly paid minimum and overtime wages at the mandatory, statutory rate, as required under the FLSA, 29 U.S.C. §§206, 207, and the New York Labor Law ("NYLL"). They additionally alleged failure to provide wage notices and pay stubs under the NYWTPA. Mr. Melendez also alleged discrimination and harassment based on his race and national origin (Hispanic) in violation of the New York State Human Rights Law, while Mr. Aminzada claimed retaliatory discharge. Defendants denied Plaintiffs' claims and asserted multiple affirmative defenses (including the outside sales and white collar exemptions). Defendants also filed a counterclaim against Mr. Aminzada.

II.   **The Settlement is Fair and Reasonable under the <u>Cheeks</u> Factors**

Courts in the Second Circuit require judicial approval of FLSA claims sought to be settled by stipulated dismissal. <u>Cheeks</u>, 796 F.3d at 206. Any proposed FLSA settlement agreement must be "fair and reasonable" under the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. See <u>Wolinsky v. Scholastic Inc</u>., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Here, all of the factors support approving the parties' settlement.

---

[1] Plaintiff's counsel respectfully notifies this Court that Plaintiff Dario Melendez agreed to the settlement in principle at mediation but is presently unable to execute the Agreement, annexed as Exh. A, because Plaintiff Melendez is on mandatory leave following military orders. Upon information and belief, Plaintiff Melendez will return and be able to execute this agreement on or after June 25, 2023.

*First,* the total settlement amount of Fifty-five Thousand Dollar ($55,000.00) is reasonable in light of Plaintiffs' potential range of recovery at trial. If Plaintiffs were successful in proving their hours and pay as alleged in the Complaint and establishing coverage under the FLSA, and Defendants were unsuccessful in asserting the outside sales and white collar exemptions to overtime pay, each Plaintiff would be entitled to at least Thirty Thousand Dollars ($30,000) in owed wages under the FLSA and NYLL. If Defendants could not prove a good faith defense to the imposition of liquidated damages, each Plaintiff would also be entitled to recover an additional amount equal to his owed wages. Defendants' failure to provide a hiring notice or wage statements could result in an additional Ten thousand Dollars ($10,000.00) in statutory damages. Plaintiffs' other potential damages – back pay, emotional distress, and other compensatory damages resulting from the alleged hostile environment (Mr. Melendez) and alleged unlawful termination (Mr. Aminzada) – would depend not only on prevailing on their substantive discrimination claims, which Defendants deny, but also on convincing a jury about how to value their emotional distress, and economic damages.

*Second*, this settlement agreement will enable the parties to avoid the anticipated burdens of continuing with protracted litigation. Through settlement, Plaintiffs avoid the stress of contentious litigation and the loss of income associated with taking days off from work in order to attend depositions and trial. They also avoid the stress, uncertainty, and delay that would be inherent in completing discovery and engaging in motion practice.

*Third,* from Plaintiffs' perspective, the prompt payment of the settlement amount is far preferable to continued litigation. As noted above, there are significant factual disputes in the case. Through settlement, all parties have control over their recovery and financial exposure and avoid accruing additional attorneys' fees for an uncertain result. Plaintiffs are interested in a settlement that eliminates the uncertainty of trial, expedites their receipt of funds, provides closure, and minimizes the disruption to their life caused by the requisite active participation of prosecuting this case.

As to the fourth and fifth <u>Cheeks</u> factors, the settlement is clearly the result of arm's length negotiation by zealous advocates. This conclusion is supported by the history of this litigation, which included a proposed motion to dismiss and a counterclaim. Moreover, the parties were assisted in reaching the settlement by neutral mediator Rhonda Epstein. There are no indicia of fraud or collusion.

### III.     The Non-Monetary Terms are Reasonable

The parties' settlement does not include the types of provisions discussed in <u>Cheeks</u> that contravene FLSA's remedial purposes. <u>Snead v. Interim Healthcare of Rochester, Inc.</u>, 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018). Plaintiff's release of claims is narrowly tailored, and Defendants have also agreed to release claims against Plaintiff.

The parties' non-disparagement clause is also mutual and makes clear that truthful statements about the nature of the case, the settlement of the case, and the parties' experiences in litigating their claims and defenses, do not constitute disparagement. Defendants will provide

*Melendez et al v. A.K. Rashidzada Corporation, et al.*
June 6, 2023
Page 4 of 5

Plaintiff a neutral employment reference in response to any inquiries about Plaintiffs' employment. These provisions reflect compromises made among the parties and are within the guardrails of fairness set out in Cheeks.

    IV.    **Plaintiff's Attorneys' Fees are Reasonable**

An award of attorneys' fees is also subject to review under Cheeks and must be reasonable. Rainboth-Venditti v. Nat'l Retail Sols, Inc., No. 6:16-CV-137 (ATB), 2018 U.S. Dist. LEXIS 19130, at *2 (N.D.N.Y. Feb. 6, 2018). The Second Circuit courts refer to the Goldberger factors when assessing the reasonableness of attorneys' fees: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).

Under the settlement agreement, Plaintiffs' counsel will get a check for $19,250.00 (fees) and $1,221.50 (costs), approximately thirty-five percent (35.00%) of the Fifty-five thousand Dollars ($55,000.00) settlement. This award includes costs for filing fees and service of process.

This amount is lower than the lodestar amount Plaintiffs would seek to recover at trial, currently estimated at Twenty-Seven thousand Five hundred Eighty-two Dollars and Fifty cents ($27,582.50), not including any time spent today, and bound to increase substantially should the case need to proceed through depositions, summary judgment motion practice, and trial. The Firm has spent approximately Eighty-Seven and 6/10 (87.6) hours to date. It is also considerably lower than the percentage typically awarded to plaintiffs' counsel in employment matters.

Here, the portion of the settlement amount attributable to attorneys' fees is $19,250.00 and costs is $1,221.50 which amounts to approximately thirty-five percent (35.00%) of the total gross Settlement Sum. This is consistent with what courts in this Circuit routinely approve - - as the typical fee award amounts to one-third of the total settlement, thereby demonstrating its reasonableness. See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust, 925 F.3d 63, 71 (2d Cir. 2019) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of Plaintiff and their attorneys more fully'"); see also Kornell v. Haverhill Ret. Sys., 790 Fed. App'x 296, 298 (2d Cir. 2019) (approving attorneys' fees award of one-third the gross settlement sum - - not one-third the net settlement sum after deduction of attorneys' fees - - and finding that trial court decision to grant same was permissible as long as "its award of attorneys' fees is reasonable."); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); Thornhill v. CVS Pharmacy, Inc., 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

For the reasons stated above, Plaintiffs respectfully request that the Court approve the settlement agreement in this case. We thank the Court for its attention to this matter.

Respectfully submitted,

*/ s / Michael W. Macomber*

Michael W. Macomber, Esq.